**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL ANTHONY LOMBARDO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-1999** |
| | : | |
| **BRANDON T. EVANS, _et al._,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**YOUNGE, J.**                                                **AUGUST 22nd, 2024**

Plaintiff Michael Anthony Lombardo, a prisoner currently incarcerated at the Lehigh

County Jail, brings this _pro se_ action alleging violations of his civil rights.  Named as Defendants

are:  Brandon T. Evans; Jenna Marie Fliszar;[1] Kevin Samual Santos, Esquire; James B. Martin;

Jay William Jenkins; 7 John Does; and Diane Bail Bonds.  For the following reasons, the Court

will grant Lombardo's application for leave to proceed _in forma pauperis_ and dismiss the

Amended Complaint.[2]

---

[1]        Jenna Marie Fliszar is incorrectly identified on the docket as Jenna Marie Pliszar.

[2]        Lombardo commenced this civil action by filing an application to proceed _in forma pauperis_, prisoner trust fund account statement, and a Complaint.  (ECF Nos. 1-3.)  The _in forma pauperis_ application was denied without prejudice because it lacked sufficient financial information.  (_See_ ECF No. 5.)  On June 5, 2024, Lombardo submitted an Amended Complaint and a Declaration regarding his financial status.  (ECF Nos. 8, 9.)  Because the Declaration also lacked sufficient financial information, the Clerk of Court was directed to send Lombardo another blank form _in forma pauperis_ application so that he could provide the required information.  (ECF No. 10.)  On July 30, 2024 and August 16, 2024, additional applications to proceed _in forma pauperis_ and prisoner trust fund account statements were filed.  (ECF Nos. 12, 13, 14, 15.)

On June 5, 2024, the Clerk of Court opened an additional matter, Civil Action No. 24-2378.  Because the complaint in Civil Action No. 24-2378 was duplicative of the Amended Complaint filed in this case, Civil Action No. 24-2378 was dismissed as duplicative and closed.  (_See_ Civil Action No. 24-2378, ECF No. 4.)  A letter dated June 25, 2024 from Lombardo was entered on the docket of Civil Action No. 24-2378 on August 16, 2024.  (_See_ Civil Action No.

## I.    FACTUAL ALLEGATIONS[3]

In the Amended Complaint, Lombardo presents a chronology of alleged violations of his rights that began during an interaction with Allentown City police officers in May 2021.  (*See* Am. Compl. at 4-6.)  It appears that several state court criminal prosecutions were ongoing during the period covered by the Amended Complaint and may be relevant to Lombardo's allegations, although he does not clearly tie his allegations to the various criminal cases.  *See, e.g., Commonwealth v. Lombardo*, CP-39-CR-0001614-2021 (C.P. Lehigh); *Commonwealth v. Lombardo*, CP-39-MD-0002298-2021 (C.P. Lehigh); *Commonwealth v. Lombardo*, CP-39-CR-0003812-2022 (C.P. Lehigh); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

Lombardo first claims that Allentown Police Officer Evans and several John Doe officers engaged in a high-speed pursuit "inside the city limits" on May 25, 2021, that caused Lombardo "to be crashed into and forced into a private residence."  (Am. Compl. at 4.)  According to Lombardo, he was "then chased down and seized, assaulted, arrested and charged."  (*Id.* (citing

---

24-2378, ECF No. 5.)  Lombardo asserted that Civil Action No. 24-2378 should not have been dismissed because it was not duplicative of the Civil Action No. 24-1999, as he added defendants and allegations in the complaint filed in Civil Action No. 24-2378.  (*See* Civil Action No. 24-2378, ECF No. 5.)  However, the complaint Lombardo references, which added defendants and allegations, was entered on the docket of the present case as the Amended Complaint (ECF No. 9) and is the filing that is the subject of this Memorandum.  Thus, Civil Action No. 24-2378 shall remain closed as it is duplicative of the case at bar.

[3]      As noted above, the following factual allegations are taken from the Amended Complaint, which is the governing pleading in this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  Since "the most recently filed amended complaint becomes the operative pleading," *id.*, the Court does not consider the initial Complaint in determining whether Lombardo has stated a plausible claim.  *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings.").  The Court adopts the pagination supplied by the CM/ECF docketing system.

"MJ 39-MD-0000122 2021 and "R 1321683").)  Lombardo avers that the charge, "R 1321683",
was dismissed on June 1, 2021.  (*Id.*)  At a preliminary hearing on June 14, 2021, Magistrate
Rashid Santiago "bound all charges to Common Pleas Court."  (*Id.*)  Lombardo claims that
Magistrate Santiago heard testimony from the Commonwealth's sole witness, Defendant Evans,
who "provided testimony of (profiling) (stalking) (discrimination) & (harassment) (assault) and
(witness tampering)," as well as an illegal high-speed pursuit.  (*Id.*)  Lombardo asserts that he
was prejudiced by Magistrate Santiago's determinations.  (*Id.*)  He further contends that
Pennsylvania law regarding inner city high-speed pursuits prohibits municipal police from
engaging in a high-speed pursuit for minor traffic violations, but Magistrate Santiago
nevertheless found probable cause for the unspecified crimes with which Lombardo was
presumably charged.  (*Id.*)

Lombardo also asserts, confusingly, that he was arrested on June 24, 2021.  (*Id.* at 5
(citing "B/W # 2020-2810-O.C.").)  He claims that he "was discriminated and prejudiced and
civilly and judicially conspired on and denied due process" on August 24, 2021.  (*Id.*)  He further
avers that his Public Defender, Jenna Fliszar, who was "prejudiced and deficient" was removed
from his case on September 27, 2021, and was replaced by Robert Sletvold, "who did nothing."
(*Id.*)

Lombardo claims that he posted bail on November 24, 2021, in "MJ-39-CR-0001614-
2021 and was refused release.  Due to (B/W #2020 2810-O.C.) 150 days after arrest on (B/W
#2020 2810-O.C.)" and "while being illegally held plaintiff was granted habeas corpus for
(fleeing & attempting to elude officers) MJ 39 CR-1614-2021 & all charges were to be
dismissed."  (*Id.*)  He alleges, however, that he was "subjected to further incarceration due to
Lehigh County Court of Common Pleas refusal to provide due process of law."  (*Id.*)  Lombardo

contends that the was "reprocessed" on December 1, 2021, and remained in jail on the same charges for which he was incarcerated on June 24, 2021.[4]  (*Id.*)  Lombardo claims that he was denied due process and extradited to New Jersey.  (*Id.*)

Additionally, Lombardo alleges that he "suffered a home invasion by Diane Bail Bond's Agents [on August 22, 2022].  Approx (4) agents broke into a residence, entered and brandished weapons, restrained and cuffed and removed" Lombardo, escorting him to the Lehigh County Jail.  (*Id.* at 6.)  He states that the Lehigh County Court of Common Pleas "allegedly" issued a bench warrant in "CP-39-CR-1614-2021."  (*Id.*)  Lombardo contends this was handled in a prejudicial and discriminatory manner.  (*Id.*)  Kevin Santos was appointed to represent Lombardo in September 2022 and is alleged to have done "nothing but conspire with to interfere with Plaintiff['s] liberty."  (*Id.*)  Lombardo claims that he was held another 183 days, bailed out, and was discriminated against.  (*Id.*)  He asserts that on May 24, 2023, he "could no longer stand the mental abuse any longer knowing [the] Court of Common Pleas violated his life and liberties."  (*Id.*)[5]

Lombardo includes in the Amended Complaint a lengthy list of claims against both named Defendants and unnamed individuals.  (*See* Am. Compl. at 7-16.)  He references various Pennsylvania criminal statutes and United States constitutional amendments throughout the list, but does not clearly explain the basis for the claims.  Some of the claims have no discernable connection to the facts alleged.  Lombardo sets forth his claims as follows:  (1) Count 1 –  "Pa.

---

[4]      In support of this assertion, Lombardo cites to "Exhibit C CP-39-CR-1614-2021 & CP-29-MD-2298-2021."  (Am. Compl. at 5.)  There are no documents appended to Lombardo's Amended Complaint.

[5]      The state court dockets reveal that Lombardo entered a plea of *nolo contendere* on May 24, 2023 in *Commonwealth v. Lombardo*, CP-39-CR-0001614-2021 (C.P. Lehigh) and *Commonwealth v. Lombardo*, CP-39-CR-0003812-2022 (C.P. Lehigh).

C.A. § 2705 recklessly endangering another person" against Defendant Evans and seven John Doe officers; (2) Count 2 – "42 Pa. C.S. § 8550 willful misconduct" against Defendant Evans and seven John Doe officers; (3) Count 3 – "18 Pa. C.S. § 2701 simple assault" against Allentown Police Department and Defendant Evans; (4) Count 4 – "unlawful restraint 18 Pa. C.S. § 2902" against Defendant Evans and seven John Doe officers; (5) Count 5 – "42 Pa. C.S. § 8850 false arrest" against Defendant Evans; (6) Count 6 – "18 Pa. C.S. § 2903 false imprisonment" against Defendant Evans, seven John Doe officers, James B. Martin, Jay William Jenkins, Marie Fliszar, Michael Statt,[6] Robert Sletvold, Kevin Samual Santos, fifteen Jane Does and fifteen John Does; (7) Count 7 – "18 Pa. C.S. § 2709 Harassment" against Defendant Evans; (8) Count 8 – "18 Pa C.S. § 2709.1 Stalking" against Defendant Evans and seven John Doe officers; (9) Count 9 – "42 U.S.C. § 1985 conspiracy to interfere with civil rights" against Defendant Evans, seven John Doe officers, Public Defenders Office, Jenna Marie Fliszar, Michael Statt, Robert Sletvold, Kevin Samual Santos, James B. Martin, Jay William Jenkins, fifteen Jane Does, and fifteen John Does; (10) Count 10 – "Failure to Intervene 42 U.S.C. § 1985" against seven John Doe officers of the Allentown Police Department, Public Defenders Office, Jenna Marie Fliszar, Michael Statt, James B. Martin, Jay William Jenkins, and "15 Jane Doe, 15 John Doe Judicial Officers"; (11) Count 11 – "Malicious Prosecution 42 U.S.C. § 1985" against "Allentown and Lehigh County District Attorney's Office James B. Martin and Jay William Jenkins"; (12) Count 12 – "Search and Seizure 18 U.S.C. § 2236" against Allentown City Police Department and its officers Brandon T. Evans and all John Does"; (13) Count 13 – "Conspiracy to Interfere with Constitutional Rights 42 U.S.C § 1985" against "Allentown Police

---

[6]      While "Michael Statt" is referenced throughout the Amended Complaint, he is not included in the caption or list of Defendants, and it is unclear from the Amended Complaint who Michael Statt is, and how he is alleged to have violated Lombardo's rights.

Department Magistrate Rashid Santiago, Public Defender Office, Lehigh County, Jenna M. Fliszar, Robert Sletvold, Kevin Santos, Jay William Jenkins, R. Steinberg & 25 Jane & John Doe Judicial Officers"; (14) Count 14 – "18 Pa. C.S. § 2901 Kidnapping" against "Diane Bail Bonds & (4) John Doe Agents"; (15) Count 15 – "18 Pa. C.S. § 2903 False imprisonment/false arrest" against "Diane Bail Bonds & (4) John Doe Agents"; (16) Count 16 – "42 U.S.C. § 1985 Conspiracy to interfere with civil rights" against "Diane Bail Bonds & (4) John Doe Agents," Jay William Jenkins, James B. Martin, and ten John & Jane Does; (17) Count 17 – "42 U.S.C. § 1981 Equal protection of law" against Diane's Bail Bonds, James B. Martin, Jay William Jenkins, Public Defenders Office Jenna M. Fliszar, Michael Statt, Robert Sletvold, Kevin Samual Santos, four John Doe agents, fifteen Jane Doe agents, and fifteen John Doe agents; and (18) Count 18 – "42 Pa. C.S. § 8550 Willful misconduct" against "Diane's Bail Bonds, (4) John Doe Agents, James B. Martin, Jay William Jenkins, 10 John Doe[s] & 10 Jane Doe[s]." (*Id.* at 7-15.)

The claims are asserted against the Defendants in their individual and official capacities. (*Id.* at 13, 16.) As relief, Lombardo seeks monetary damages. (*Id.*) Lombardo further requests that his case be placed on the Civil Rights Panel for appointment of counsel. (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Lombardo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

---

[7]    Since Lombardo is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which

requires the Court to determine whether the complaint contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court

will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences

in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . .

contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366,

374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Lombardo is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v.*

*Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the

complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts

in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245); *see also Doe v.*

*Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024)

("While a court must liberally construe the allegations and "apply the applicable law, irrespective

of whether the pro se litigant mentioned it be name," *Higgins v. Beyer*, 293 F.3d 683, 688 (3d

Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that

the facts alleged could potentially support."). An unrepresented litigant "'cannot flout

procedural rules — they must abide by the same rules that apply to all other litigants.'" *Vogt,* 8

F.4th at 185.

Furthermore, "[i]f the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Group Against Smog*

*and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.   DISCUSSION

While Lombardo references numerous Pennsylvania statutory provisions, the Court understands Lombardo primarily to raise constitutional claims under 42 U.S.C. § 1983 pursuant to the Court's federal question jurisdiction. (*See* Am. Compl. at 3.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995). Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As explained below, however, Lombardo has failed to allege a plausible basis for any claim.

### A.     Claims Against Defense Counsel and Office of the Public Defender of Lehigh County

Lombardo seeks to present various constitutional claims against Jenna Marie Fliszar, identified as a public defender, and Kevin Santos and Robert Sletvold, identified as conflict counsel, for their actions taken as defense counsel in Lombardo's various state court prosecutions.  (*See* Am. Compl. at 7-16.)  Such claims are not plausible because an attorney performing the traditional functions of counsel is not a state actor for purposes of § 1983.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (*per curiam*) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983).  That is so regardless of whether the attorney is a public defender or private counsel.  *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him.").

Additionally, since public defenders are not state actors "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding,"  *Polk Cnty.*, 454 U.S. at 325, their employing entities, *i.e.,* public defender's offices, have been treated similarly in this context, *see Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (*per curiam*) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the

public defender's office because neither is a state actor for purposes of § 1983."); *see also Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016) (*per curiam*) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings."). Accordingly, Lombardo's claims against Jenna M. Fliszar, Kevin Santos, and Robert Sletvold, and the Lehigh County Public Defenders Office will be dismissed.

**B.    Claims Barred by Prosecutorial Immunity**

Lombardo seeks to present various constitutional claims against James B. Martin and Jay William Jenkins, who are identified by Lombardo as the District Attorney and an Assistant District Attorney, respectively. (*See* Am. Compl. at 2.) It is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "[W]hether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). Absolute immunity extends to the decision to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (internal citations omitted). "[P]rosecutors [also] are entitled to absolute immunity from claims for damages related to their roles in choosing when and whether to dismiss charges or withdrawal an arrest warrant lodged

against a defendant." *Garcia v. Philadelphia Dist. Attorney's Off.*, No. 23-1224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (extending absolute immunity to protect those functions in which the prosecutor acts as an "advocate for the State," even if they "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom"), *cert. denied*, No. 23-6327, 2024 WL 675086 (U.S. Feb. 20, 2024).

Lombardo's allegations concern actions taken by Martin and Jenkins in Lombardo's various state court prosecutions.  (*See* Am. Compl. at 7-16.)  Because Lombardo's claims against Defendants Martin and Jenkins are based upon their actions as prosecutors representing the Commonwealth in the judicial phase of his state criminal proceedings, each is entitled to absolute immunity.  Accordingly, Lombardo's claims against Martin and Jenkins will be dismissed.

### C.   Claims Barred by Judicial Immunity

Lombardo has not named any judicial officer as a Defendant, although he references judicial officers in his list of claims.  To the extent that he seeks to present claims against Magistrate Santiago in connection with his prosecution in *Commonwealth v. Lombardo*, MJ-31102-CR-0000122-2021 or *Commonwealth v. Lombardo*, CP-39-CR-0001614-2021, such claims must be dismissed.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there

is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *see also Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity).  As Lombardo's allegations concerning Magistrate Santiago are based on acts he took in his judicial capacity while presiding over a matter over which he had jurisdiction, Magistrate Santiago is entitled to absolute judicial immunity from Lombardo's claims.

### D.    Official Capacity Claims

Lombardo seeks to bring claims against the individual Defendants in their official capacities as well as their individual capacities.  (*See* Am. Compl. at 13, 16.)  Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

Nonetheless, a municipality such as the City of Allentown is not vicariously liable under § 1983 for the actions of its employees.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011)

(holding that local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  Rather, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation omitted).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury."  *Id.* (internal quotations and alterations omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker."  *McTernan*, 564 F.3d at 658.  General allegations that simply paraphrase the standard for municipal liability do not support a plausible claim.  *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

To the extent Lombardo seeks damages from the individual police Defendants in their official capacities, or from the City of Allentown, he has failed to allege facts that support

*Monell* liability.  Lombardo has not pled a municipal policy or custom with respect to any of the alleged constitutional violations, that any such policy or custom caused the constitutional violation, or any municipal failures amounting to deliberate indifference.  Accordingly, the official capacity claims are not plausible and will be dismissed.

      **E.**      **John Doe Defendants and Personal Involvement**

      Lombardo claims against the individually named Defendants, as well as various John and Jane Doe Defendants.  In almost every one of the eighteen counts of the Amended Complaint, Lombardo lists the individual Defendants against whom he seeks to present each claim, and also includes a group of Does as Defendants.  (*See* Am. Compl. at 4-16.)  Specifically, he includes numerous Does as Defendants in Counts 1, 2, 4, 6, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 18.  (*See id.* at 6-16.)

      The manner with which Lombardo has pled his claims makes it unclear whether the same Does are involved in each of the claims, or whether different individuals are alleged to have participated in the various constitutional violations.  Lombardo does not provide any factual allegations regarding the behavior of any individual Doe Defendant.  Pleading that a group of individuals violated his rights, without specifying what each individual did or did not do that violated his rights, is insufficient to put a defendant on notice of the conduct with which he is charged and does not state a plausible claim.  *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

F.      **Fourth Amendment and Related Due Process Claims**

Lombardo seeks to present claims based on alleged violations of his Fourth Amendment rights.  (*See Am.* Compl. at 4-6.)  Specifically, the Court understands Lombardo to allege the following Fourth Amendment claims: illegal search and seizure against Defendant Evans and John Does (Count 12); false arrest against Defendant Evans (Count 5); false imprisonment against Defendant Evans, John Does, James Martin, Jay William Jenkins, Jenna Fliszar, Michael Statt, Robert Sletvold, Kevin Santos, and 15 John Does and 15 Jane Does (Count 6); and malicious prosecution against Defendants James Martin and Jay Williams (Count 11).

As an initial matter, the § 1983 claims against Defendants Martin and Jenkins are barred based on prosecutorial immunity, as discussed above, and the claims against Fliszar, Sletvold, and Santos also are not plausible because these Defendants are not state actors.  Nonetheless, even putting aside whether Lombardo may bring such claims against the various Defendants given the immunity and state action issues, Lombardo has failed to provide a factual basis for any of these claims.[8]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants

---

[8]      Lombardo also lists as Count 10 a "Failure to intervene 42 U.S.C. § 1985," and mentions the Fourth, Fifth, Sixth and Fourteenth Amendments.  (*See* Am. Compl. at 11.)  He seeks to bring this claim against seven John Doe officers, Jenna Marie Fliszar, Michael Statt, James B Martin, Jay William Jenkins, fifteen Jane Does and fifteen John Doe judicial officers.  (*Id.*)  Such passing reference is not sufficient to raise claims under these principles.  *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  In any event, the Amended Complaint does not provide any factual basis for a failure to intervene claim, so the Court will not discuss any such claim further.

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  As indicated by this language, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable."  *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).  "[W]hat is reasonable depends on the context within which a search takes place."  *Id.* The elements of a § 1983 claim for unreasonable search and seizure are:  (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances.  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989).  Although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits an arresting officer to perform a search incident to an arrest.  *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

False arrest and false imprisonment are "nearly identical claims" that are generally analyzed together.  *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005).  To state a section 1983 claim for false arrest or false imprisonment, the plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)).  Therefore, a plaintiff must allege facts sufficient to support a reasonable inference that the defendants acted without probable cause.

 "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted).  Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted).  The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).  "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person.  *Chiaverini v. City of Napoleon, Ohio*, 144 S. Ct. 1745, 1748 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)).  A plaintiff asserting a constitutional malicious prosecution claim must allege facts showing that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).  A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the

plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").  "Probable cause exists [for purposes of a malicious prosecution claim] if there is a fair probability that the person committed the crime at issue." *Harvard*, 973 F.3d at 199 (internal quotations omitted).  That a "valid" crime was also charged along with a charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 144 S. Ct. at 1750 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . .  Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*. (emphasis added)).

Claims that police officers violated a person's rights in connection with a police pursuit are governed by a "shocks the conscience" framework under the Due Process Clause. *See Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717-18 (3d Cir. 2018); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Lombardo's Fourth Amendment and related Due Process claims fail for several reasons. First, they are conclusory.  As alleged, on May 25, 2021, Defendant Evans and John Doe officers engaged in a high-speed pursuit that caused Lombardo to crash and be forced into a private residence.  (Am. Compl. at 4.)  Lombardo claims that he "was then chased down and seized, assaulted, arrested and charged." (*Id.*)  He claims that one of the charges was dismissed on June 1, 2021. (*Id.*)  According to Lombardo, Defendant Evans provided evidence of "(profiling) (stalking) (discrimination) & (harassment) (assault) and (witness tampering)" related to the high-speed pursuit. (*Id.*)  He further claims that he posted bail on November 24, 2021 on charges related to docket number "MJ-39-CR-0001614-2021" and was refused release. (*Id.* at 5.)  He

also avers that he was granted "habeas corpus for (fleeing & attempting to elude officers) MJ-39-CR-1614-2021 & all charges were to be dismissed."  (*Id.*)

Lombardo does not sufficiently describe the circumstances leading up to the chase, seizure, and subsequent prosecution, to support an inference that Defendants' actions were unconstitutional.  *See, e.g., Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation omitted)), *aff'd sub nom. Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461 (3d Cir. Nov. 8, 2023); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting [defendant] lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims because plaintiff failed to assert plausible claim of lack of probable cause where plaintiff, while alleging he was twice arrested, did not have drugs in his possession, did not break the law, and police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false).

Additionally, any claims based on the high-speed chase and Lombardo's arrest related to the May 25, 2021 incident are barred by the statute of limitations.  The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  The Pennsylvania statute of limitations for a personal injury action is two years.  *Kach*, 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)).  Thus, the limitations period applicable to Lombardo's § 1983 claims is two years.  A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when [she] can file suit and obtain relief."  *Dique*, 603 F.3d at 185 (quotations omitted).  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).  Furthermore, pursuant to the prison mailbox rule, a prisoner' s complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Lombardo's false arrest and false imprisonment claims, and due process claims based on the high-speed chase, accrued the day he was pursued and arrested, May 25, 2021.  *See Ojo v. Luong*, 709 F. App'x 113, 116 (3d Cir. 2017) (*per curiam*) ("Most of [plaintiff's claims] accrued when defendants conducted their searches and seizures on July 11, 2011, because [plaintiff] knew or should have known the basis for these claims at that time."); *Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61,64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was "detained pursuant to legal

process"); *Green v. United States*, 418 F. App'x 63, 67 (3d Cir. 2011) ("The statute of limitations

for a § 1983 claim seeking damages for a violation of the Fourth Amendment for false arrest or

false imprisonment begins to run 'at the time the claimant becomes detained pursuant to legal

process.'"); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for

false arrest and assault (which would include LeBlanc's excessive force claim) typically accrue

on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of

the injury."); *Small v. Lower Paxton Twp.*, No. 22-1146, 2023 WL 4631575, at *6 (M.D. Pa. July

19, 2023) (claims based on police vehicle pursuit accrued on the date of the pursuit), *motion to*

*certify appeal denied*, No. 22-1146, 2024 WL 691360 (M.D. Pa. Feb. 20, 2024), *and dismissed*,

No. 23-2408, 2024 WL 3739175 (3d Cir. May 22, 2024).[9]  Because he filed the initial Complaint

more than two years after the accrual of any search, seizure, false arrest, or false imprisonment

claim, or a claim based on the pursuit, these claims are time-barred.

To the extent Lombardo raises a malicious prosecution claim against Defendants Martin

and Jenkins based on the prosecution of the May 25, 2021 incident, (*see* Am. Compl. at 11

(Count 11)), this claim is barred by prosecutorial immunity, as discussed above, and it also is

time-barred.  Here, Lombardo claims that he was granted habeas corpus relief on the fleeing and

attempting to elude officers charge related to "MJ-39-CR-1614-2021."  (*See id.* at 5.)  Indeed,

the state court docket for *Commonwealth v. Lombardo*, CP-39-CR-0001614-2021 (C.P. Lehigh),

reflects that a charge of fleeing/eluding officer was dismissed on November 30, 2021.  Thus,

Lombardo's malicious prosecution claim accrued on that date and is now time-barred because

---

[9]      To the extent that Lombardo seeks to allege an excessive force claim based on the May 25, 2021 incident, such claim also would be time-barred.  *See Hickox v. Cty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (*per curiam*) ("Hickox's cause of action accrued on November 13, 2010, the date on which he alleges he was injured by the defendants' actions.").

the initial Complaint in this case was filed more than two years after the dismissal of the claim. *See McDonough v. Smith*, 588 U.S. 109, 116 (2019); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989); *Lloyd*, 857 F. App'x at 64 (stating that the statute of limitations begins to run on malicious prosecution claims when "the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in [his] favor" (quotation omitted)).  To the extent Lombardo brings malicious prosecution claims based on the dismissal of charges on June 1, 2021, (*see* Am. Compl. at 4), those claims also are untimely.  Nor is there any basis for tolling here.  *See Ong v. Hudson Cnty. Superior Ct., N.J. Law Div. Admin. Office*, 760 F. App'x 133, 135-36 (3d Cir. 2018) (*per curiam*) (affirming district court's dismissal of § 1983 excessive force and false imprisonment claims where complaint was filed "well after the [two-year] limitations period expired" and where "they have offered no basis to toll the statute of limitations").  Accordingly, Lombardo's Fourth Amendment claims, and his due process claim based on the police chase, also will be dismissed.[10]

### G.  Conspiracy Claims

Lombardo presents two claims of conspiracy pursuant to 42 U.S.C. § 1985.  First, Lombardo asserts a claim against Defendant Evans, seven John Doe officers, Public Defenders Office, Jenna Marie Fliszar, Michael Statt, Robert Sletvold, Kevin Samual Santos, James B. Martin, Jay William Jenkins, fifteen Jane Does, and fifteen John Does.  (*See* Am. Compl. at 10 (Count 9).)  Second, he asserts a claim against "Allentown Police Department Magistrate Rashid

---

[10]     Further, to the extent Lombardo brings claims against Evans based on how Evans testified in court, those claims are barred by absolute witness immunity.  *See Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (holding that under absolute witness immunity a convicted defendant could not state a claim for damages under § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial); *Carter v. Kane*, 717 F. App'x 105, 109 (3d Cir. 2017) (*per curiam*) (holding that witnesses are absolutely immune from damages liability based on their testimony).

Santiago, Public Defender Office, Lehigh County, Jenna M. Fliszar, Robert Sletvold, Kevin

Santos, Jay William Jenkins, R. Steinberg & 25 Jane & John Doe Judicial Officers."  (*See id.* at

12 (Count 13).)  Nothing in the Amended Complaint supports a basis for a claim under § 1985.

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2)

motivated by a racial or class based discriminatory animus designed to deprive, directly or

indirectly, any person or class of persons to the equal protection of the laws; (3) an act in

furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.

1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3)

defendants must have allegedly conspired against a group that has an identifiable existence

independent of the fact that its members are victims of the defendants' tortious conduct");

*Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the

plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd*,

770 F.2d 1070 (3d Cir. 1985), *and aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir.

1985).  Nothing in the Amended Complaint suggests any factual basis for race or class-based

discrimination.  To the extent Lombardo invokes this statute, his claims are not plausible.

It is possible that Lombardo seeks to bring his conspiracy claim pursuant to § 1983.  The

elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more

persons conspire to deprive any person of [constitutional rights]; (2) one or more of the

conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act

injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a

citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under

the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018)

(quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a

conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild

LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice." *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Even if Lombardo could bring a § 1983

conspiracy claim against the Defendants alleged in Counts 9 and 13 of the Amended Complaint,

he has not alleged any factual basis from which a conspiracy could plausibly be inferred.

Accordingly, any § 1985 and § 1983 conspiracy claims will be dismissed.

###### H.      Equal Protection Claim

As Count 17 of the Amended Complaint, Lombardo asserts a claim pursuant to "42

U.S.C. § 1981 Equal protection of law" against Diane's Bail Bonds, James B. Martin, Jay

William Jenkins, Public Defenders Office Jenna M. Fliszar, Michael Statt, Robert Sletvold,

Kevin Samual Santos, four John Doe agents, fifteen Jane Doe agents, and fifteen John Doe

agents.  (Am. Compl. at 15.)  Section 1981 prohibits private acts of race discrimination.  *See

Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (Section 1981, "on its face, is

limited to issues of racial discrimination in the making and enforcing of contracts").  Because

Lombardo has alleged no facts that support a basis for such a claim, his § 1981 claim will be

dismissed.  Nor has he alleged a basis for an equal protection claim under § 1983 because he has

not plausibly alleged that he was treated differently from others who were similarly situated.  *See

City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection

Clause of the Fourteenth Amendment commands that no State shall deny to any person within its

jurisdiction the equal protection of the laws, which is essentially a direction that all persons

similarly situated should be treated alike.") (internal quotation omitted); *Johnson v. Koehler*, No.

14-1490, 2015 WL 1470948, at *16 (M.D. Pa. Mar. 31, 2015) (dismissing claim of selective prosecution where plaintiff failed to allege that a similarly situated person was treated differently).

I.     **Other Claims**

Lombardo asserts that the "Lehigh County Court of Common Pleas" refused to provide due process, and he was reprocessed and further detained on the original charges on December 1, 2021.  (Am. Compl. at 5.)  He also claims that he was subsequently "illegally extradited" to New Jersey.  (*Id.*)  It is entirely unclear what Lombardo is referencing with regard to these allegations. In any event, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Lehigh County Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, claims against the Lehigh County Court of Common Pleas are barred by the Eleventh Amendment and will be dismissed.

Lombardo's references to various provisions of the Pennsylvania Crimes Code, including 18 Pa. C.S. § 2705, § 2701, § 2709, § 2709.1, and § 2901 also do not provide a basis for a plausible claim.  First, "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another."  *Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (*per curiam*) ((quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).  Second, to the extent that Lombardo relies on these criminal statutes as a basis of civil liability against the Defendants, he has failed to state a claim because there is no private cause of action for these crimes.  *See,*

*e.g., Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's stand-alone civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code); *see also Kovalev v. Lab. Corp. of Am. Hldgs.*, No. 22-552, 2023 WL 2163860, at *17 (E.D. Pa. Feb. 22, 2023) (explaining that plaintiff could not maintain civil claim for reckless endangerment based on 18 Pa. C.S. § 2705 because "there is simply no civil remedy under this statute" (citing *Muhammad v. City of Lewisburg, PA*, No. 21-284, 2022 WL 774880, at *6 (M.D. Pa. Jan. 20, 2022)); *Climo v. Rustin*, No. 11-1339, 2012 WL 3779178, at *11 (W.D. Pa. Aug. 31, 2012) (dismissing claim for simple assault because 18 Pa. C.S. § 2701 does not provide a private right of action); *Matthews v. Beard*, No. 11-221J, 2012 WL 2192225, at *7 (W.D. Pa. June 14, 2012) (finding no private right of action for harassment pursuant to § 2709); *Bane v. City of Philadelphia*, No. 09-2798, 2009 WL 6614992, at *12 (E.D. Pa. June 18, 2010) ("In Pennsylvania, the offense of kidnapping set forth in 18 P.C. § 2901, *et seq.*, does not create a private right of action.").

**J.     State Law Claims**

To the extent Lombardo seeks to assert state law claims, including the intentional torts of unlawful restraint, 18 Pa C.S. § 2902 and false imprisonment, 18 Pa C.S. § 2903, as well as willful misconduct pursuant to 42 Pa. C.S. § 8550, he has not pled an independent basis for the Court's jurisdiction over those claims.[11]  District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28

---

[11]     Because the Court has dismissed Lombardo's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims.

U.S.C. § 1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which means that "unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3)).

Lombardo does not plead the citizenship of any party to this suit.  (*See* Am. Compl. at 1-2.)  Since the Amended Complaint fails to allege a basis for diversity jurisdiction, any state law claims will be dismissed without prejudice for lack of jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Lombardo leave to proceed *in forma pauperis* and dismiss the Amended Complaint.  All federal claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Lombardo will not be given leave to amend these claims as the Court concludes that amendment would be futile, because such claims are time-barred, barred by principles of immunity, or are otherwise improper.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  Any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

Additionally, the Court will deny Lombardo's request for the appointment of counsel.  *See*

*Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel

is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An

appropriate Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**